IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUNDIP BHUNDIA,<br><br>    Plaintiff,<br><br>v.<br><br>JAMES G. PESOLI; JGP LAW, LLC,<br><br>    Defendants, | )<br>)<br>)<br>)<br>) Case No.<br>)<br>) Jury Trial Demand<br>)<br>) |

## COMPLAINT

Plaintiff SUNDIP BHUNDIA, by and through his undersigned counsel, for his Complaint against Defendants JAMES G. PESOLI and JGP LAW, LLC states as follows:

### PARTIES

*Plaintiff*

1. Plaintiff SUNDIP BHUNDIA ("Plaintiff") is an individual who resides in and is a citizen of Switzerland.

*Defendants*

2. Defendant JAMES G. PESOLI ("Pesoli") is an individual who resides in and is a citizen of the State of Illinois.

3. Defendant JGP LAW, LLC ("JGP Law") is an Illinois limited liability company, which is headquartered in Rolling Meadows, Illinois. Plaintiff is informed and believes that Pesoli is the sole member and manager of JGP Law. Pesoli and JGP Law are referred to collectively as "Defendants."

## JURISDICTION AND VENUE

4. This Court has subject matter over this Complaint by virtue of diversity jurisdiction under 11 U.S.C. § 1332. Specifically, Plaintiff is a citizen and resident of the country of Switzerland. Defendants are citizens and residents of the State of Illinois. The amount in controversy exceeds $75,000, exclusive of interest and costs.

5. The venue of this action is proper pursuant to 28 U.S.C. § 1391 in the Northern District of Illinois because the Defendants all reside in this district and the acts complained of occurred in this district.

## CLAIM FOR NEGLIGENCE – LEGAL MALPRACTICE

6. Plaintiff is an overseas investor who became interested in investing in entertainment projects in the United States. Given Plaintiff's lack of experience in the entertainment industry, Plaintiff needed the assistance of an attorney to provide him counsel and transactional services relating to his potential investments. Plaintiff was introduced by an individual named Francesca Dutton to Defendants who hold themselves out on their firm website as "provid[ing] quality legal services with dedicated client attention and focus in matters pertaining to corporate and entertainment matters."

7. Knowing Plaintiff's interest in investing in entertainment projects, Defendants introduced Plaintiff to a potential investment in a feature length theatrical motion picture based upon the intellectual property known as "Tales From The Crypt" ("TFTC"). Plaintiff was interested and sought Defendants' legal advice and counsel in connection with the investment. Plaintiff is informed and believes that Defendants drafted an "Investment Agreement" between Plaintiff and a company called Aloris, LLC ("Aloris") pursuant to which Plaintiff would invest $350,000 in the TFTC motion picture project.

8. Defendants pressured Plaintiff to move forward with the Investment Agreement as soon as possible and to invest in the TFTC motion picture project despite the absence of documentation showing that Aloris had the legal right to make a motion picture based on TFTC. On April 17, 2018, based on Defendants' advice and pressure, Plaintiff entered into the Investment Agreement with Aloris. On April 18, 2018, Plaintiff wired the initial sum of $100,000 to Aloris pursuant to the Investment Agreement.

9. Plaintiff was later advised that Aloris may not have any right to make a motion picture based on TFTC and that there may be third-party claims affecting the right to make a motion picture. Plaintiff has since demanded that Aloris provide the complete chain of title showing the right to make a motion picture based on TFTC, but Aloris has thus far failed to provide a complete chain of title. Plaintiff has therefore demanded that Aloris refund his $100,000 investment and terminate the Investment Agreement, but Aloris has refused.

10. Defendants failed to provide Plaintiff competent legal advice in connection with the Investment Agreement. It was clearly material to the Investment Agreement that Aloris possess the necessary rights to make a motion picture based on TFTC. In fact, Aloris expressly represented, warranted, and covenanted in section 13(a) of the Investment Agreement that "it has all the necessary rights to develop, produce, finance, deliver, distribute, market, distribute, license and otherwise exploit the Picture."

11. Defendants should have reviewed full and complete chain of title documents showing whether or not Aloris actually had the right to make a motion picture based on TFTC before advising Plaintiff to move forward with the investment. Indeed, section 3(c) of the Investment Agreement explicitly requires that Plaintiff "receive[] satisfactory evidence as to the chain of title to the Picture held by Aloris (including complete proof of rights payments), and

copies of which shall be attached hereto and incorporated herein as Exhibit 'B'." But Aloris did not attach Exhibit B to the agreement, and Defendants never demanded that Aloris attach the chain of title to Plaintiff before entering into the Investment Agreement. Aloris is now contending that Plaintiff "waived" the chain of title requirement. Defendants should have told Plaintiff to not enter into any agreements or provide any money to Aloris until it proved it had the necessary rights to make a motion picture based on TFTC.

12. Plaintiff relied upon Defendants to provide him proper legal advice concerning whether to invest, whether to sign the Investment Agreement, and whether Aloris had the rights to make a motion picture based on TFTC. But Defendants failed to tell Plaintiff about the lack of proper chain of title documentation and instead rushed and pressured Plaintiff to sign the Investment Agreement and rushed Plaintiff to wire funds to Aloris. No competent lawyer would have done so without proper chain of title documentation in hand. Defendants should have told Plaintiff that Aloris had no rights to make a motion picture based on TFTC. Defendants' services fell far below the standard of care for lawyers in this community.

13. As a direct and proximate result of Defendants' negligent legal services, Plaintiff entered into the Investment Agreement and invested the sum of $100,000. The Investment Agreement further states that Plaintiff will invest up to $350,000. Plaintiff paid Defendants the sum of $68,213.28 in connection with their legal services. Plaintiff has received no value from the legal services provided by Defendants, which were incompetent and below the standard of care.

14. Plaintiff has now been forced to commence legal proceedings against Aloris seeking termination of the Investment Agreement and a refund of his $100,000 investment. Plaintiff is incurring attorneys' fees and costs as a result. Plaintiff has been forced to incur

attorneys' fees and costs in excess of approximately $10,000 in connection with the Investment Agreement.

15. Accordingly, Plaintiff has sustained damages in excess of $75,000 caused by the negligent conduct of Defendants.

WHEREFORE, Plaintiff demands judgment against Defendants, and against each of them, for compensatory damages in an amount to be determined by the trier of fact, together with his taxable costs and disbursements herein, and such other and further relief as the court may deem just and equitable.

Dated: October 5, 2018

Respectfully submitted,

/s/ Jeremiah T. Reynolds
Attorney for the Plaintiff

Jeremiah T. Reynolds (*Admitted to the General Bar of the Northern District of Illinois*)
California Bar No. 223554
EISNER, APC
9601 Wilshire Blvd., 7th Floor
Los Angeles, CA
(310) 855-3200
(310) 855-3201

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that a copy of the foregoing Complaint will be served upon the following, or an agent thereof, via personal delivery by an individual over the age of 18 who is not a party to this action, and that a notice certifying the same will be filed upon service.

ADDRESS OF DEFENDANTS

/s/ Jeremiah T. Reynolds
Jeremiah T. Reynolds